# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-1556V
UNPUBLISHED

| | |
|---|---|
| SHARYN HALL,<br><br>                  Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                  Respondent. | Chief Special Master Corcoran<br><br>Filed: May 6, 2022<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Jessica Olins*, Maglio Christopher & Toale, PA, Seattle, WA, for Petitioner.

*Jamica Marie Littles*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On October 7, 2019, Sharyn Hall filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges the Table claim that she suffered was a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine received on October 5, 2017. Petition, ECF No. 1 at 1, 4. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although Respondent conceded entitlement in this case, the parties could not agree on damages, so the disputed issues were submitted to an SPU Motions Day hearing on April 29, 2022.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to **$110,000.00**, for her actual pain and suffering, plus **$5,232.74** representing Petitioner's unreimbursed expenses.

## I.     Procedural Overview

As noted above, the case was initiated in October 2019. On April 30, 2021, Respondent filed a Rule 4(c) Report in which he conceded that Petitioner was entitled to compensation in this case. ECF No. 32. Accordingly, on May 7, 2021, a ruling on entitlement issued finding Petitioner entitled to compensation for her SIRVA injury. ECF No. 34.

The parties were subsequently unable to informally resolve the issue of damages, so a briefing schedule was set on November 24, 2021. ECF No. 42. Petitioner filed her brief on January 11, 2022, requesting that I award her $145,000.00 in compensation - representing her past/actual pain and suffering. ECF No. 45. Conversely, in a brief filed on March 14, 2022, Respondent argued that Petitioner should be awarded only $75,000.00 for past pain and suffering. ECF No. 46. Petitioner filed a Reply brief on March 25, 2022. ECF No. 48. The parties have otherwise agreed upon an award of $5,232.74 representing Petitioner's unreimbursed expenses, so that amount will be awarded as well. ECF No. 48 at 1.

In March of this year, I informed the parties that this case was appropriate for an expedited hearing and ruling via my "Motions Day" practice, at which time I would decide the disputed damages issues based on all evidence filed to date plus whatever oral argument they wanted to make. ECF No. 47. The parties agreed, and the hearing took place on April 29, 2022. Minute Entry dated April 29, 2022.[3] I orally ruled on Petitioner's damages at that time, and this Decision memorializes my determination.

## II.    Pain and Suffering

### A. Legal Standard and Prior SIRVA Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Winkle v. Sec'y Health & Hum. Servs.*, No. 20-0485V, 2022 WL 221643, at *2-4 (Fed. Cl. Spec. Mstr. Jan. 11, 2022).

---

[3] Jessica Olins appeared on behalf of Petitioner, and Jamica Littles appeared on behalf of Respondent. The transcript of the April 29, 2022 Hearing in this case was not filed as of the date of this Decision, but my oral ruling is incorporated by reference herein.

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

### B.  Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Ms. Hall's awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on April 29, 2022. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

I find that $110,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering. The record establishes that Petitioner's shoulder pain was initially fairly severe, prompting her to raise a concern with her primary care provider only 11 days after her vaccination on October 16, 2017. Ex. 4 at 11. Petitioner's left shoulder pain persisted, and by November 14, 2017, she reported she was taking Aleve nightly due to left shoulder pain which had recently ranged from 5-8/10. *Id.* at 5. Petitioner underwent a left shoulder MRI on November 16, 2017, Ex. 4 at 75, and received a steroid injection at an orthopedic appointment on November 20, 2017, at which time she reported pain in her left shoulder of 8/10. Ex. 7.1 at 38, 41.

Throughout this time Petitioner was also suffering from and treating for long-standing right shoulder problems for which a surgical procedure was planned. On December 27, 2017, Petitioner's orthopedist recommended she instead undergo left shoulder surgery, although both shoulders were noted to be symptomatic it was felt her left shoulder was worse than her right shoulder. Ex. 7.1 at 33-34.

---

[4] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Petitioner underwent left shoulder surgery on January 16, 2018 – a little more than three months after her vaccination. Petitioner's surgery was complicated, requiring a second surgeon and consisting of three related sub-procedures: 1) An arthroscopically assisted rotator cuff repair; 2) An arthroscopic subacromial decompression; and 3) An arthroscopic distal clavicle resection. Ex. 7.1 at 21. Petitioner's post-surgical diagnoses included: 1) A rotator cuff tear; 2) Impingement; and 3) Acromioclavicular joint arthritis. *Id.*

However, subsequent to her surgery, Petitioner made an excellent recovery. While Petitioner described her left shoulder pain as 8/10 at worst on January 30, 2018, she reported her average pain level at that time was 2/10 – only two weeks after her surgery. Ex. 7.1 at 10. Petitioner completed 16 total post-operative physical therapy sessions and was discharged on April 30, 2018. Ex. 7.1 at 10, 35, 51; Ex. 2 at 34. At her April 30, 2018 discharge – not quite seven months after her October 5, 2017 flu vaccination – Petitioner reported her "overall condition improved as evidenced by her greater ability to sleep." Ex. 2 at 34. She exhibited improved range of motion, reported no pain with movement, exhibited no difficulty or limitations reaching overhead, and had only mild activity limitations. *Id.* Petitioner was found to have met her goals and was therefore discharged from further physical therapy. *Id.* at 35.

In sum, Petitioner was far "better" within approximately seven months of aggressive treatment, which included but was not limited to: 18 physical therapy sessions[5], one steroid injection[6], a left shoulder MRI scan[7], and surgical intervention.[8] While her pain levels were initially moderate to high, her reported pain was very low, 1-3/10, by February 2018. Ex. 2 at 3, 34. And she sought no further medical treatment for her left shoulder after her April 30, 2018 discharge from physical therapy.

All of the above records factor into my determination. But I have also fully considered both the sworn affidavit, and later filed declaration, of Petitioner, which detail the limitations she experienced in work duties, family life, sleeping, and her exercise of

---

[5] Petitioner underwent a total of approximately 18 physical therapy sessions. *See, e.g.*, Exs. 2, 7.1.

[6] Petitioner received one steroid injection on November 20, 2017. Ex. 7.1 at 41.

[7] Petitioner underwent a left shoulder MRI on November 16, 2017, with the following "Conclusion: 1) Acromioclavicular hypertrophic change and small subacromial osteophyte; 2) Partial-thickness to near full thickness tear to the supraspinatus and superior aspect of the infraspinatus. No evidence of retraction; 3) Subacromial subdeltoid bursitis; and 4) Degenerative change the labrum. There may be a small superimposed SLAP lesion." Ex. 4 at 75.

[8] Petitioner underwent left shoulder surgery on January 16, 2018. Ex. 7.1 at 21-23.

4

daily functions attributable to her shoulder injury. Exs. 8, 18. In addition, Petitioner details the difficultly she had assisting in the relocation of her mother-in-law to an assisted living in the beginning of 2018 due to her shoulder injury. Ex. 18, ¶¶ 3-4. Petitioner also indicates that after she was released from physical therapy, she continued to experience pain, trouble sleeping, and restricted range of motion. Ex. 18, ¶ 6. She states that she joined a gym and continued her home exercises from more than a year. Ex. 18, ¶ 7. In her affidavit dated August 28, 2019, Petitioner indicated her shoulder limitations persisted, however by the time of her declaration dated January 22, 2022, she stated she was currently pain free. Ex. 8, ¶14; Ex. 18, ¶8. While I give credit and consideration to the suffering described by Petitioner in her statements, I find that Petitioner was substantially recovered at her discharge from physical therapy as described above.

Petitioner argues that her case is most comparable to three SIRVA decisions also involving surgical intervention, *Wilson v. Sec'y of Health & Hum. Servs.*, No. 19-0035V, 2021 WL 1530731 (Fed. Cl. Spec. Mstr. Mar. 18, 2021) (awarding $130,000.00 for actual pain and suffering); *Blanco v. Sec'y of Health & Hum. Servs.*, No. 18-1361V, 2020 WL 4523473 (Fed. Cl. Spec. Mstr. July 6, 2020) (awarding to be $135,000.00 for actual pain and suffering); and *Reed v. Sec'y of Health & Hum. Servs.*, No. 16-1670, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for actual pain and suffering).[9] Although these are reasonable comparables, they involve cases with more demonstrated severity, and ultimately I deem the sums awarded in them to exceed the pain and suffering demonstrated in this case.

Respondent – in contrast – offers two comparable cases to defend his proposed pain and suffering sum. *See Bordelon v. Sec'y of Health & Hum. Servs.*, No. 17-1892V, 2019 WL 2385896 (Fed. Cl. Spec. Mstr. Apr. 24, 2019) (awarding $75,000.00 for actual pain and suffering); *Attig v. Sec'y of Health & Hum. Servs.*, No. 17-1029V, 2019 WL 1749405 (Fed. Cl. Spec. Mstr. Feb. 19, 2019) (awarding $75,000.00 for actual pain and suffering). But I also find these cases somewhat unhelpful in guiding the outcome herein, as they did not involve injuries requiring surgical intervention (a factor that in most cases reasonably supports a higher award, all other things being equal).[10]

---

[9] Petitioner also cited to two other cases involving surgical intervention, *Reynolds v. Sec'y of Health & Hum. Servs.*, No. 19-1108V, 2021 WL 3913938 (Fed. Cl. Spec. Mstr. July 29, 2021) (awarding $125,000.00 for actual pain and suffering); and *Rafferty v. Sec'y of Health & Hum. Servs.*, No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020) (awarding $127,500.00 for pain and suffering). These comparables were somewhat more in line with my ultimate determination.

[10] Respondent also offered other cases, involving surgical intervention and higher awards of pain and suffering, as distinguishable from the instant case. ECF No. 46 at 12-14 (citing *Selling v. Sec'y of Health & Hum. Servs*, No. 16-588V, 2019 WL 3425224 (Fed. Cl. Spec. Mstr. May 2, 2019)(awarding $105,000.00 for actual pain and suffering); *Knudson v. Sec'y Health & Hum. Servs.*, No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for actual pain and suffering); *Collado v. Sec'y Health & Hum. Servs.*, No. 17-0225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) (awarding

In considering comparable cases in order to ascertain a fair award in this case, I deem the best comparable to be *Cates v. Sec'y of Health & Hum. Servs.*, No. 18-0277V, 2020 WL 3751072 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $108,000.00 for actual pain and suffering).[11] While there are some individual distinctions between the *Cates* petitioner and Ms. Hall, both cases involved injuries that were initially relatively severe and required early surgical intervention, but which also both resulted in a good outcome only seven months after vaccination. Because the procedure in this case was more complex, an award somewhat higher than that allowed in *Cates* is appropriate.

### III.    Conclusion

Based on my consideration of the complete record as a whole and for the reasons discussed in my oral ruling, I find that $110,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.

Accordingly, I award Petitioner a lump sum payment of $115, 232.74 (representing an award of $110,000.00 for actual pain and suffering and $5,232.74 for Petitioner's unreimbursed expenses) in the form of a check payable to Petitioner. This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this decision.

**IT IS SO ORDERED.**

                                        <u>s/Brian H. Corcoran</u>
                                        Brian H. Corcoran
                                        Chief Special Master

---

$120,000.00 for actual pain and suffering); *Dobbins v. Sec'y Health & Hum. Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for actual pain and suffering).

[11] Respondent also cited to the *Cates* decision in passing at oral argument, although Respondent did not point out that the award in that case greatly exceeded the sum he proposed. Rather, Respondent more fully discussed my award for pain and suffering in a different case, where (contrary to the majority of these cases) I awarded *less* than $100,000.00 for a case also involving shoulder surgery. *Shelton v. Sec'y of Health & Hum. Servs.*, No. 19-0279V, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021) (awarding $97,500.00 for actual pain and suffering). However, the award in *Shelton* was mostly impacted by the petitioner's significant delay in seeking medical treatment – a factor not present herein.